[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-14231

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

SHAMONTE VIRGIL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 5:23-cr-00006-MTT-CHW-1

_____

Before NEWSOM, GRANT, and ABUDU, Circuit Judges.

PER CURIAM:

Shamonte Virgil appeals his conviction and 70-month sentence for being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1). On appeal, he raises three arguments. First, he contends that 18 U.S.C. § 922(g)(1) is unconstitutional, both facially and as applied to him. Second, he contends that his prior convictions for possession of marijuana with intent to distribute under Georgia law do not qualify as "controlled substance offenses" under U.S.S.G. §§ 2K2.1(a)(2) and 4B1.2(b). Third, he contends the district court abused its discretion and imposed a substantively unreasonable sentence. After careful review, we conclude Virgil's first two challenges are foreclosed by precedent, and he has not shown an abuse of discretion as to the third. Therefore, we affirm.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

In January 2023, a federal grand jury charged Virgil with one count of knowingly possessing a firearm as a felon. He later pled guilty without a plea agreement, and the district court accepted his plea.

Before his sentencing, a probation officer prepared a presentence investigation report ("PSI"), which summarized his offense conduct, consistent with his guilty plea. On March 22, 2022, an officer with the Bibb County Sheriff's Office observed Virgil driving a car without a tag. When the officer attempted to stop the car, Virgil continued to drive, crossed several streets, and pulled through a gas station. The officer activated his sirens, and Virgil

eventually stopped the car and jumped out, dropping a firearm in the process. Virgil picked up the gun, put it in his pants, and ran from the officer on foot. After a short chase, Virgil fell and dropped the gun again. The firearm was loaded and was confirmed to be a Ruger, Model: Security-9, 9mm semiautomatic handgun made in Arizona, with a scratched off, unreadable serial number.

The officer searched Virgil's car and located a small amount of suspected marijuana and a digital scale. Virgil was charged in state court with possession of a firearm by a convicted felon, criminal use of an article with altered identification mark, knowingly making a false statement pertaining to motor vehicle insurance, and fleeing and attempting to elude. Virgil had twice been convicted in Georgia state court of felonies: first for possession of marijuana with intent to distribute in February 2015, and second for possession of marijuana with intent to distribute in November 2018. After his indictment and arrest in this case, Virgil was released on bond and placed on pretrial supervision, with the condition that he submit to drug and alcohol testing. While on that supervision, Virgil tested positive for marijuana on three occasions.

The probation officer calculated Virgil's guidelines range using the 2023 Sentencing Guidelines. It first assigned Virgil a base offense level of 24 under U.S.S.G. § 2K2.1(a)(2). Specifically, the PSI concluded that Virgil's February 2015 and November 2018 possession of marijuana with intent to distribute crimes were both felony "controlled substance offenses" under the Guidelines, *see* U.S.S.G. § 4B1.2(b), leading to an enhanced base offense level. The

PSI then increased Virgil's offense level by four because the firearm had an obliterated serial number, *see* U.S.S.G. § 2K2.1(b)(4)(B). Finally, the PSI awarded Virgil a three-level reduction for acceptance of responsibility, *see* U.S.S.G. § 3E1.1(a), (b). This led to a total offense level of 25.

The PSI next calculated Virgil's criminal history score to be six, leading to a criminal history category of III under the Guidelines. The PSI gave Virgil one criminal history point for the 2014 marijuana possession case, two points for the 2018 marijuana possession case, two points for a 2016 conviction for giving a false name and date of birth to a law enforcement officer, and one point for a 2012 theft conviction. Based on these calculations, the PSI calculated Virgil to have a guideline imprisonment range of 70 to 87 months. It also noted that the maximum sentence for his conviction was 10 years' imprisonment. *See* 18 U.S.C. § 924(a)(2) (2022).[1]

Virgil objected to the PSI, arguing that he should not receive an enhanced base offense level because his prior convictions for possession of marijuana with intent to distribute did not qualify as controlled substances under U.S.S.G. § 4B1.2(b). Specifically, he argued that Georgia's statutory definition of marijuana at the time of his convictions was categorically broader than the federal definition of marijuana at the time of his federal sentencing, and

---

[1] Congress has since raised the maximum sentence for violating 18 U.S.C. § 922(g)(1). *See* 18 U.S.C. § 924(a)(8).

therefore the prior convictions were not categorically "controlled substance offenses."

Virgil also moved for a downward variance or departure from the guidelines range. He explained that he had a difficult up-bringing and that his mother had tragically died in 2020. He also noted that his first convictions occurred when he was very young and that he, consequently, had trouble obtaining meaningful work. He also explained that, while on pretrial release, he managed to keep full-time employment and provide for his two young children. It noted that his sincere change in behavior was mitigating and showed that he had moved beyond his criminal history.

At sentencing, the court overruled Virgil's objection to his base offense level. It explained that, in its view, Virgil's argument was foreclosed by this Court's precedent. It then asked the parties for their positions about what would be a reasonable sentence.

Virgil argued that his conduct after his offense—before and after his indictment—reflected a change in behavior and rehabilitation. He explained that, after his first felony conviction, he had struggled to get work and that it was not until after this offense that he had secured steady employment. He noted that he had been working hard and receiving raises until his recent lay off in a corporate restructuring—though he expected to be re-employed soon. He explained his new skills and his desire to contribute to society in a way that he had not done previously. For these reasons, he argued that a sentence between 70 and 87 months would be "excessive and greater than necessary to satisfy the concerns of

[Section] 3553." Virgil also personally addressed the court and explained that he had made mistakes, wanted to be "fully accountable," and "should be held responsible" for those mistakes. He expressed that he was taking this opportunity to change course and that this was a "shot to make it right."

The government, on the other hand, noted Virgil's history of criminal activity and his three positive marijuana tests while on pretrial release, including one that occurred shortly before sentencing. Without recommending a specific sentence, it argued these facts showed that the court's sentence needed to "get [Virgil] to a place where he respects the law."

The district court explained that it had considered the factors in 18 U.S.C. § 3553(a) and had made "an individualized assessment based on the facts of [the] case." It noted that Virgil exhibited negative conduct since the offense including testing positive for marijuana, but that his work history "in the last few months" were "positive." It thus concluded that, although a downward variance from the guideline range was not appropriate, a sentence at the bottom of the guideline range would be proper. Accordingly, it sentenced Virgil to 70 months' imprisonment, to be followed by three years of supervised release.

After the court announced its decision, Virgil objected to the procedural and substantive reasonableness of the sentence, based on the previous objections. The district court allowed Virgil to self-surrender at a later date and, after the hearing, entered a written

23-14231                Opinion of the Court                    7

judgment consistent with its statements at the hearing. Virgil appealed.

After Virgil filed his notice of appeal, this Court published an opinion in *United States v. Dubois*, 94 F.4th 1284 (11th Cir. 2024) ("*Dubois I*"), which foreclosed some of the arguments Virgil makes on appeal. However, the defendant in *Dubois* sought *certiorari* review from the Supreme Court, and that Court granted the petition, vacated this Court's judgment, and remanded the case to this Court "for further consideration in light of" *United States v. Rahimi*, 602 U.S. 680 (2024). *Dubois v. United States*, 145 S. Ct. 1041, 1042 (2025). We held Virgil's appeal in abeyance until the resolution of *Dubois I* on remand. In June 2025, this Court reinstated its prior decision in *Dubois I*. *United States v. Dubois*, 139 F.4th 887, 894 (11th Cir. 2025) ("*Dubois II*"). With the benefit of supplemental briefing on *Dubois II*, we now turn to the issues Virgil raises on appeal.

## II. STANDARDS OF REVIEW

We review the constitutionality of a statute *de novo*, but we review a challenge to the constitutionality of a statute only for plain error when a party raises the challenge for the first time on appeal. *United States v. Wright*, 607 F.3d 708, 715 (11th Cir. 2010); *see also United States v. Utsick*, 45 F.4th 1325, 1332 (11th Cir. 2022) (detailing the test for plain-error review).

We follow a "two-step process" when reviewing a sentence. *United States v. Trailer*, 827 F.3d 933, 935 (11th Cir. 2016). First, we review the sentence for procedural reasonableness. In doing so, we determine "whether the district court committed any significant

procedural error, such as miscalculating the advisory guideline range, treating the Sentencing Guidelines as mandatory, failing to consider the 18 U.S.C. § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Id.* at 936. As part of this first step, we review *de novo* the legal question of whether a prior conviction qualifies as a "controlled substance offense" under the Sentencing Guidelines. *United States v. Bates*, 960 F.3d 1278, 1293 (11th Cir. 2020). Second, we review "whether the sentence is substantively reasonable in light of the totality of the circumstances and the § 3553(a) factors." *Trailer*, 827 F.3d at 936.

"In reviewing the [substantive] reasonableness of a sentence, we will not substitute our own judgment for that of the sentencing court and we will affirm a sentence so long as the court's decision was 'in the ballpark of permissible outcomes.'" *United States v. Butler*, 39 F.4th 1349, 1355 (11th Cir. 2022) (quoting *United States v. Rosales-Bruno*, 789 F.3d 1249, 1257 (11th Cir. 2015) (Opinion of E. Carnes, J.)). A party challenging a sentence as unreasonable bears "the burden of establishing the sentence is unreasonable in light of the record and the § 3553(a) factors." *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008).

## III. DISCUSSION

As we noted above, Virgil makes three arguments on appeal. We address each in turn.

### A. Section 922(g) is Constitutional.

First, Virgil argues for the first time on appeal that his statute of conviction, 18 U.S.C. § 922(g)(1), is unconstitutional under the Second Amendment, both facially and as applied to him specifically. *Dubois II* forecloses this argument. There, we explained that neither *United States v. Rahimi*, 602 U.S. 680 (2024), nor *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), abrogated our decision in *United States v. Rozier*, 598 F.3d 768 (11th Cir. 2010), which held that Section 922(g)(1) is constitutional under the Second Amendment. *Dubois II*, 139 F.4th at 893–94; *see Rozier*, 598 F.3d at 771 ("[S]tatutory restrictions of firearm possession, such as § 922(g)(1), are a constitutional avenue to restrict the Second Amendment right of certain classes of people. Rozier, by virtue of his felony conviction, falls within such a class.").

In his supplemental brief, Virgil argues that we are not compelled to apply *Rozier* because it applies a pre-*Bruen* methodology. However, we explicitly held in *Dubois I* and *Dubois II* that *Rozier* was not so overruled or abrogated. *See Dubois I*, 94 F.4th at 1291–93; *Dubois II*, 139 F.4th at 893–94. We are bound by those holdings, even if Virgil thinks they are erroneous. *See Dubois II*, 139 F.4th at 892 ("'[A] prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc*.'" (quoting *In re Lambrix*, 776 F.3d 789, 794 (11th Cir. 2015))).

At bottom, "[w]e require clearer instruction from the Supreme Court before we may reconsider the constitutionality of

[S]ection 922(g)(1)." *Id.* at 894.  Until then, we are bound by our precedent to affirm on this issue.

### B. The District Court did not err in applying the Sentencing Guidelines.

Second, Virgil argues that, under Georgia law, his convictions for possession of marijuana with intent to distribute are not controlled substance offenses.  He contends that Georgia's marijuana offenses are "overbroad in three ways."  First, he contends Georgia's definition of marijuana includes all plants in the cannabis genus, while the federal government's definition is narrower and only includes one species.  Second, he argues that Georgia defines marijuana to exclude only completely defoliated stalks, while the federal government defines it to exclude all stalks.  Third, he contends that, at the time of his federal sentencing, the federal government excluded hemp from its definition of marijuana, while Georgia included it in its definition of marijuana.

First, we explained in *Dubois I* that "[a] drug regulated by state law is a 'controlled substance' for state predicate offenses, even if federal law does not regulate that drug."  92 F.4th at 1296.  Accordingly, the fact that Georgia's definition of marijuana was broader than the federal definition—for example by including all species and only excluding "defoliated stalks"—does not affect whether the crime was a controlled substance offense under the Guidelines.  *See id.* at 1296–98.  So long as marijuana was regulated by state law, differences with the federal definition do not matter for the purpose of the Guidelines under *Dubois I*.  *Id.*

In addition, *Dubois I*'s holding that courts must look to state law at the time of conviction to determine what qualifies as a "controlled substance offense" forecloses Virgil's argument that his Georgia marijuana convictions are categorically overbroad when compared with federal law at the time of his sentencing. *Id.* at 1300.

Sensing the problem *Dubois I* poses to his appeal, Virgil argues that, in fact, Georgia law requires that a controlled substance offense must involve a substance that is included in both the Georgia and federal drug schedules. He points to a Georgia Court of Appeals decision, *C.W. v. Department of Human Services*, 836 S.E.2d 836 (Ga. Ct. App. 2019), to support his position. However, *C.W.* was decided several years before our decision in *Dubois*, which is binding on us as a panel, and there is "no exception" to our prior panel precedent rule "where the prior panel failed to consider arguments raised before a later panel." *United States v. Gillis*, 938 F.3d 1181, 1198 (11th Cir. 2019). In addition, the facts of *Dubois I* make clear that Virgil's argument about *C.W.* amounts to an argument that *Dubois I* was wrongly decided. *See id.* In *Dubois I*, we held that a Georgia conviction for possession with intent to distribute marijuana counted as a "controlled substance offense" under the guidelines because "Georgia law regulated marijuana . . . at the time of [the defendant's] 2013 conviction." *Dubois I*, 94 F.4th at 1300. Virgil's argument that his Georgia marijuana convictions from the same time period do not so qualify would necessarily mean that *Dubois I* was wrong, and we cannot adopt such a rule. *See Gillis*, 938 F.3d at 1198.

Moreover, and in any event, the Georgia Court of Appeals' ruling in *C.W.* is not inconsistent with *Dubois*. Under *Dubois*, we ask whether "the substance that [the defendant] trafficked is a 'controlled substance' *under the guidelines*." *Id.* at 1297 (emphasis added). A drug can be excluded under a state's definition of "controlled substance"—for example Georgia's definition of "controlled substance," which excludes marijuana—and still be considered a "controlled substance" under U.S.S.G. § 4B1.2, which only requires that "a drug [be] *regulated* by state law at the time of [his] convictions." *Id.* at 1300 (emphasis added). Here, marijuana was "regulated" by Georgia state law at the time of Virgil's convictions because, at that time, Georgia law criminalized the possession with intent to distribute marijuana, and therefore Virgil's convictions were properly considered controlled substance offenses under the Guidelines. *See id.*; *see also United States v. Reid*, No. 24-11000, 2025 WL 1649591, at \*2 (11th Cir. Jun 11, 2025) (unpublished) (reaching the same conclusion).[2]

---

[2] In his supplemental brief, Virgil argues that we need not follow *Dubois I* on this issue because it "fails to consider controlling legal authority"—*C.W.* The case he cites for that proposition does not hold that and, in fact, we have held the opposite. *See United States v. Lee*, 886 F.3d 1161, 1163 n.3 (11th Cir. 2018) ("It does not matter whether a prior case was wrongly decided, whether it failed to consider certain critical issues or arguments, or whether it lacked adequate legal analysis to support its conclusions." (citations omitted)).

### C. Virgil has not shown that his 70-Month Sentence is Substantively Unreasonable.

In his final argument, Virgil argues that his 70-month sentence is unreasonable.  He highlights the rehabilitative steps he took after his arrest and before the federal indictment, including getting and maintaining a full-time job and attempting to comply with his conditions of release.  He contends he took full responsibility for his offense conduct and began the steps necessary "to leave the cycle of incarceration" behind him.  He argues that the district court should have given these facts more weight and that, since his guidelines range should have been lower based on his prior argument, his 70-month sentence was greater than necessary under 18 U.S.C. § 3553(a).

Under § 3553(a), a district court must impose a sentence "sufficient, but not greater than necessary," to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, and to protect the public from future crimes of the defendant.  18 U.S.C. § 3553(a).  In addition, the court must consider, among other factors, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to avoid unwarranted sentence disparities among similarly situated defendants.  *Id.*

"[W]e have identified three ways in which a district court can abuse its discretion [and] impos[e] a substantively unreasonable sentence: (1) failing to properly consider a relevant sentencing factor that was due significant weight, (2) giving significant weight

to a factor that was not relevant, or (3) committing a clear error of judgment by weighing the sentencing factors unreasonably." *Butler*, 39 F.4th at 1356; *see also United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (*en banc*). In assessing the reasonableness of a sentence, we "ordinarily expect a sentence within the Guidelines range to be reasonable." *Gonzalez*, 550 F.3d at 1324. For similar reasons, a sentence imposed "well below" the statutory maximum also can indicate reasonableness. *Id.*

Though the district court must consider all relevant § 3553(a) factors, "the weight given to each factor is committed to the sound discretion of the district court," and it may attach great weight to one factor over the others. *Butler*, 39 F.4th at 1355. A court's "failure to discuss . . . 'mitigating' evidence" does not indicate that the court "erroneously 'ignored' or failed to consider th[e] evidence in determining [the defendant's] sentence." *United States v. Amedeo*, 487 F.3d 823, 833 (11th Cir. 2007). "Rather, a district court's acknowledgment that it has considered the § 3553(a) factors and the parties' arguments is sufficient." *Butler*, 39 F.4th at 1355 (citing *United States v. Sarras*, 575 F.3d 1191, 1219 (11th Cir. 2009)).

Virgil has not shown his sentence is unreasonable. First, his 70-month sentence was at the bottom of his guidelines range and "well below" the statutory maximum 10-year sentence, indicators of reasonableness. *Gonzalez*, 550 F.3d at 1324; 18 U.S.C. § 924(a)(2) (2022). Second, the district court's decision on how to weigh the aggravating facts—*i.e.,* the nature of Virgil's offense and his post-offense conduct—with the mitigating facts—*i.e.*, his efforts to find

23-14231               Opinion of the Court                 15

and maintain employment after his arrest—does not amount to an abuse of discretion. All of these factors were relevant to the appropriate sentence, *see* 18 U.S.C. § 3553(a), and the district court permissibly found one factor relevant in showing a variance was not appropriate, and another factor relevant in showing a sentence at the bottom of the guidelines range was appropriate, *Amedeo*, 487 F.3d at 833; *Butler*, 39 F.4th at 1355.[3] As we have explained, a district court may even assign great weight to one factor without abusing its discretion. *Butler*, 39 F.4th at 1355. Finally, the district court explicitly considered Virgil's arguments and provided ample explanation for the weight it was giving them and why. *See id.*; *Sarras*, 575 F.3d at 1219.

At bottom, our review of the record reveals neither "fail[ure] to properly consider a relevant sentencing factor that was due significant weight," nor the "giving [of] significant weight to a factor that was not relevant," and we are not persuaded that the district court "committ[ed] a clear error of judgment by weighing the sentencing factors unreasonably." *Id.* at 1356.

---

[3] We do not minimize the steps toward rehabilitation that Virgil argues he has begun, nor do we suggest they were irrelevant at sentencing. *See* 18 U.S.C. § 3553(a)(1) (directing a court to consider "the history and characteristics of the defendant"); *Concepcion v. United States*, 597 U.S. 481, 486 (2022) (explaining that a court considering the § 3553(a) factors should "consider[] the defendant on that day, not on the date of his offense or the date of his conviction"). We simply conclude that the district court's weighing of these relevant mitigating factors with the relevant aggravating factors was not an abuse of discretion.

## IV. CONCLUSION

For the reasons we have explained, Virgil's first two arguments are foreclosed by our precedent.  As to his third, he has not shown that his sentence falls outside "the ballpark of permissible outcomes."  *Butler*, 39 F.4th at 1355.  Accordingly, we affirm his conviction and sentence.

**AFFIRMED.**